NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVEN C. BURT,

                      Plaintiff,

                v.

MARCUS O. HICKS, et al.,

                      Defendants.

Civil Action No. 20-19459 (KMW) (SAK)

OPINION

WILLIAMS, District Judge:

This matter comes before the Court on Defendants'[1] motion to dismiss (ECF No. 101)

Plaintiff's Amended Complaint. (ECF No. 95). Plaintiff filed opposition to the motion (ECF No.

103), to which Defendants replied. (ECF No. 107.) For the reasons set forth below, Defendant's

motion shall be granted, and Plaintiff's amended complaint shall be dismissed.

I.      BACKGROUND

Plaintiff is a convicted state prisoner who has been in the New Jersey prison system since

2017. (ECF No. 95 at 4, 9.) Between 2017 and April 2020, Plaintiff was detained at South Woods

State Prison. (*Id.* at 9.) On April 20, 2020, during the early days of the COVID-19 pandemic,

Plaintiff and a number of other inmates were transferred from South Woods to Southern State

---

[1] In using the term "Defendants" in this opinion, this Court refers to the moving named Defendants Hicks, Powell, Fisher, and Nardelli. Plaintiff has additionally named ten John Doe Defendants, who have yet to be identified and served and who are thus not part of the current motion, or this Court's decision in this opinion.

Prison by way of bus. (*Id.*)   Inmates on the bus were not provided face masks, and were not socially distanced. (*Id.*)   Plaintiff was placed in a unit in Southern State which was previously used to detain those quarantined following COVID-19 exposure, which Plaintiff asserts was dirty. (*Id.* at 9-10.)   Plaintiff and other inmates in his unit asked for cleaning supplies, and were provided with a mop, bucket, water, and cleaning solution. (*Id.* at 10.)   Plaintiff asserts that, between April 20 and May 15, staff of Southern State did not disinfect or sanitize his dormitory. (*Id.* at 10-11.)

On April 27, 2020, Plaintiff began to experience symptoms including headache, fatigue, and fever. (*Id.* at 11.)   A few weeks later, on May 15, 2020, Plaintiff was tested for COVID-19, which returned a positive result, and was transferred back to South Woods by bus without being provided a mask. (*Id.*)   Plaintiff was placed in quarantine at South Woods between May 15 and June 2, 2020. (*Id.*)   Plaintiff was thereafter transferred back to Southern State by bus and without being given a mask on June 2. (*Id.* at 11-12.)

Plaintiff does not allege that he was not provided treatment for COVID-19, and his amended complaint instead suggests that he was treated for his condition as he received a chest x-ray, which indicated he developed pneumonia, and was thereafter provided with a medicated inhaler to use for breathing issues which resulted from his infection. (*Id.* at 12.)   As a result of his COVID-19 infection and pneumonia, Plaintiff alleges he has lasting breathing issues which make exercise and daily life difficult, as well as other lasting medical issues. (*Id.* at 12-13.)

Plaintiff now seeks to raise conditions of confinement and deliberate indifference to medical needs claims against a number of Defendants, all of whom are or were high level supervisory officials at the two prisons in which he was housed in 2020 and the New Jersey Department of Corrections.   Plaintiff bases these claims on his belief that these officials did not create sufficient policies to protect him from contracting the virus, including strict and absolute application of all CDC recommendations. (*Id.* at 13-18.)   Plaintiff's complaint, however, indicates

that the New Jersey prison system did, in fact, take steps to mitigate the risk of COVID-19, including testing both inmates and prison staff (*Id.* at 2), the adoption of social distancing guidelines (*Id.* at 9), and the quarantine and isolation of inmates who tested positive or were exposed to COVID-19. (*Id.* at 10-12.)

## II.  LEGAL STANDARD

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

III.   **DISCUSSION**

In his complaint, Plaintiff seeks to raise three claims – two claims under the Eighth Amendment brought pursuant to 42 U.S.C. § 1983 alleging that Defendants were both deliberately indifferent to his medical needs and that he was subjected to overly punitive conditions of confinement, and a claim under the New Jersey Civil Rights Act, asserting equivalent claims to those raised under the Eighth Amendment. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, Plaintiff must show that he was deprived of a federal constitutional or statutory right by a state actor. *Id.* The New Jersey Civil Rights Act is New Jersey's state law analogue to § 1983, and, with rare exceptions not applicable here, is construed as being identical to an equivalent claim brought pursuant to § 1983. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011). This Court will thus discuss Plaintiff's § 1983 and NJCRA claims together as they are subject to the same principles and legal requirements.

Defendants now move to dismiss all of Plaintiff's claims, arguing that he fails to state a plausible basis for relief and that they are entitled to qualified immunity. In his complaint, Plaintiff raises two classes of claims under § 1983 and the NCJRA: claims asserting overly punitive conditions of confinement, and claims asserting deliberate indifference to his medical needs. In order to plead an Eighth Amendment claim for deliberate indifference to medical needs, a prisoner must plead facts indicating both that Defendants knew of a serious medical need and were deliberately indifferent to that need. *See Natale v. Camden County Corr. Facility*, 318 F.3d 575,

581-82 (3d Cir. 2003). Deliberate indifference is a "subjective standard of liability consistent with recklessness" which will be found only where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 582 (internal quotations omitted). Deliberate indifference therefore requires more than mere negligence. S*ee King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). A medical need will be considered sufficiently serious to support a constitutional claim where that need "has been diagnosed as requiring treatment or is so obvious that a lay person would easily recognize the necessity of a doctor's attention." M*onmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). To plead an Eighth Amendment claim based on unduly punitive conditions of confinement, however, a plaintiff must plead facts indicating that the defendants subjected him to "objectively, sufficiently serious" conditions which resulted in the "denial of the minimal civilized measure of life's necessities," and that the prison officials actions indicate that he was "deliberate[ly] indifferen[t] to [the plaintiff's] health or safety" in imposing those conditions. *See Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Although neither the Supreme Court nor the Third Circuit have directly addressed how to apply these Eighth Amendment standards to the COVID-19 context, the Third Circuit has evaluated similar claims under the more prisoner-protective and thus plaintiff-friendly standards applicable under the Fourteenth Amendment in *Hope v. Warden York County Prison*, 972 F.3d 310, 324 (3d Cir. 2020). As the Court of Appeals explained in *Hope*, in evaluating the assertion that a prisoner's conditions of confinement are unconstitutionally punitive, reviewing courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID-19 unless there is "substantial evidence in the record to indicate that the officials have exaggerated

their response" to the situation. *Id.* Where a government entity has a strong interest in detaining the petitioner– which is undoubtedly true in the case of a convicted prisoner– the Third Circuit rejected the assertion that detention during the COVID-19 pandemic or exposure to COVID-19 would amount to unconstitutional punishment where the facility in which the plaintiff is housed had taken concrete steps aimed at mitigating the threat posed to detainees. *Id.* at 327-29.

The Third Circuit likewise rejected the contention that mere exposure to or risk of contracting COVID-19 would amount to deliberate indifference to medical needs, even for those especially at risk of serious complications. *Id.* at 329-31. The Third Circuit advised that Court's evaluating COVID-19 related medical claims, "[t]he context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and a reviewing court must defer to the expertise of both medical officials and prison administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic as the Constitution is "not subject to mechanical application *in unfamiliar territory.*" *Id.* at 329-30 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Thus, where a prison system has taken concrete steps towards mitigating the medical effects of COVID-19 on a detention facility, a prisoner will fall "well short of establishing that the Government was deliberately indifferent toward [his] medical needs" in light of the virus even though the detaining officials cannot entirely "eliminate all risk" of contracting COVID-19. *Id.* at 330-31.

Here Defendants argue that Plaintiff has failed to establish a plausible claim for relief as he has failed to connect the Defendants, all of whom are supervisory officials, to the specific alleged denials of his rights, and because he has not pled facts rising to the level of a constitutional violation. In order to plead a plausible claim for relief under § 1983, a plaintiff must plead facts which, if proven, would show that the named defendants had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). A supervisor or employer

6

may not be held vicariously liable for the actions of his subordinates. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Where the allegations are targeted at supervisory officials, a plaintiff seeking to show personal involvement must normally plead facts indicating that the supervisor, municipality, or corporation put into place a policy, custom, or practice which caused the constitutional violation alleged. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). A formally enacted policy, practice, or custom, or the failure to adopt such a policy, must therefore be the "moving force" behind the alleged constitutional violation to hold the municipality or corporate contractor liable. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010).

In his amended complaint, Plaintiff seeks to connect the supervisory Defendants to his claims by alleging that they failed to adopt sufficient policies to protect him from COVID-19. Plaintiff's chief complaints of failures by prison staff, however, appear to be based on violations of established policy rather than the actual lack of a policy. Although Plaintiff alleges that guards failed to provide for CDC recommended protections such as social distancing, masks, COVID-testing, and the like, he also alleges facts indicating that the New Jersey prison system did adopt policies encouraging social distancing, frequent testing of inmates and staff, quarantining of infected persons, and other precautions. The policies adopted by Defendants, then, do not appear to be the moving force behind the alleged failings – instead it is the failure of individual staff members to *follow* policies that form the basis of the alleged deficiencies. As Plaintiff has pled no facts connecting Defendants to this failing – he neither pleads that they were directly aware of and disregarded policy failings nor that they were actually involved in the decision to ignore policies – Plaintiff fails to plead a plausible claim for relief against the named Defendants in their supervisory roles. *Chavarriaga*, 806 F.3d at 222. Defendants are thus entitled to the dismissal of his amended complaint against them on that basis.

7

Moving beyond personal involvement, Plaintiff's pleadings also suffer from the additional defect that it does not follow from Plaintiff's contracting of COVID-19 that he has, in any event, suffered a constitutional violation. *Hope*, 972 F.3d at 327-31. Here, Plaintiff's complaint directly indicates that Defendants clearly did adopt policies aimed at mitigating or alleviating the risk of COVID-19 for inmates, including testing, quarantines of the infected and exposed, and social distancing protocols. As Plaintiff likewise indicates that he was treated by medical staff after contracting COVID-19, and has not otherwise pled any facts indicating that Defendants knew of and disregarded a risk to his health while he was being so treated, he has not pled facts sufficient to show that prison officials were deliberately indifferent to either his medical needs or dangerous conditions of confinement sufficient to plead a viable constitutional violation premised solely on the risk of COVID-19. *Id.* Plaintiff's amended complaint must therefore be dismissed without prejudice as to the moving Defendants on that basis as well. Defendants' motion shall therefore be granted, and Plaintiff's complaints against them dismissed without prejudice.[2]

## IV.   CONCLUSION

In conclusion, Defendants' motion (ECF No. 101) is **GRANTED**, and Plaintiff's claims against the moving Defendants are all dismissed without prejudice. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge

---

[2] Because this Court will dismiss Plaintiff's claims without prejudice as to the moving Defendants at this time, this Court need not address Defendants' arguments as to qualified immunity at this time. Should Plaintiff choose to file an amended complaint, Defendants are free to re-present their qualified immunity and official capacity arguments at that time.